**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Humberto Félix Cobo-Estrella**, Esq.<br>**Comando Estrella** Corporation<br>*Plaintiff*<br>v.<br>**United States of America,**<br>**Joseph Robinette Biden Jr.**, President<br>**United States Department of Justice**<br>*Defendants* | CIVIL ACTION<br>Case No. **3:22-cv-1493**<br>• Freedom of Speech<br>• Right to (Federal) Vote<br>• Equal Rights under the Law<br>• Fourteenth / Fifteenth<br>  Amendments<br>Demand for *Jury Trial* |

## COMPLAINT

### I.    INTRODUCTION

1.    Plaintiff *Humberto Felix Cobo-Estrella, Esq.*, a United States Citizen residing in the Commonwealth of Puerto Rico, and former Florida State resident, brings this civil action against the Federal Government of the United States of America, represented by Honorable Joe Biden, as President. Plaintiff brings this action on his behalf, as result of the systemic **separate unequal** exclusion of Plaintiff and the Commonwealth of Puerto Rico's *3.2 million* United States Citizens from the election process of elected federal public officials. Plaintiff asks the Court to find defendant's exclusion of *federal U.S. Citizens* constitutes wanton (1) **violation of Sec. 737 of the Puerto Rico Federal Relations Act**, (2) **violation of the fundamental rights to *freedom of expression/right to vote*** (3) **violation of the fourteenth (14) and fifteenth (15) amendments**, and (4) **violation of the Equal Protection under the Law**.

2.    This civil action is a commitment to defend the civil rights of federal US Citizens, based on the rule of law and the principle that **all US Citizens have *equal rights* under the law, regardless of their physical location**. Plaintiff seeks to enlighten Americans and empower federal Citizens in Puerto Rico, regardless of race or color, to unite under one objective set forth by our founding fathers, to seek *a more perfect union*. The Puerto Rico residents are "People".[1]

---

[1] See *Preamble*, Constitution of the United States.

3.      For over **one hundred (100) years** the *United States of America* flag has flown in the Commonwealth of Puerto Rico, next to Puerto Rico's flag. The Commonwealth residents were granted federal US **Citizenship** thru federal laws, such as *Jones-Shafroth Act of 1917*, and the *Immigration and Nationality Act*, 8 U.S.C. §1402.[2] Meanwhile hundreds of thousands of US Citizens from Puerto Rico, have proudly served in US Armed Forces, often sacrificing lives and health, to protect liberty and democracy. All the while, the *federal government* they served, systemically *denied* their fellow US Citizens in Puerto Rico, **the most fundamental form of freedom of speech in any Democracy, the right to vote as US Citizens in the elections of their publicly elected federal officials**, with pretextual *unamerican* excuses to only justify *inequality*.

4.      **Voting is the most basic formal expression of Citizens.** *It validates the people's consent to be governed.* However, Puerto Rico's US Citizens, specifically plaintiff, have been denied the **right** to **political expression** thru voting for national elected public officials, which results in denied opportunity to have voting participation in and influence federal government decision-making. **Defendant has denied plaintiff the right to participate in federal elections.**

5.      To this day, despite having been granted the right to *federal citizenship*, this has not translated into the ability to vote, as result of the systemic exclusion of US Citizens from Puerto Rico, from federal elections. Resulting in a *diminished* Second-Class US Citizenship. However, **voting is the way citizens express their opinion about a democratic nation**, *a fundamental right in which all citizens are given an opportunity to choose who will represent them*. **US Citizens in Puerto Rico have no elected representative in Federal Government's Executive Branch, have a single non-voting representative in Congress for what is the largest Congressional District and are often excluded from federally funded programs**. This *unjust* situation, if allowed, can result in the loss of confidence in modern American Democracy.

---

[2] … All persons born in Puerto Rico on or after January 13, 1941, and subject to the jurisdiction of the United States, **are citizens of the United States *at birth***. See 8 U.S.C. §1402. (Emphasis)

6.     The idea that *every* US Citizen should have an *equal* vote and not be denied that *right*, is engrained in American culture and now favors inclusion in federal elections. **Plaintiff is denied effective/full representation in Congress and can't vote in federal elections, despite being a natural born *federal US Citizen*. <u>Plaintiff brings before the Court an issue, not of territorial status, but an issue of fundamental and civil rights of *the citizens*, not a property</u>.**

7.     Plaintiff aspires to overcome ***disenfranchisement*** of Puerto Rico US Citizens like himself, thru this lawful legal process to seek remedy for the violation of his *fundamental* rights.

## II.     JURISDICTION

8.     This Honorable Court has original jurisdiction over plaintiff's federal claims set forth in this Complaint pursuant to 28 U.S.C. §1331, 28 U.S.C §1343(a) and 28 U.S.C. §1346. Plaintiff asserts *federal jurisdiction* by reason of a *federal question* and the United States government as a *defendant*. The Court has federal-question jurisdiction under 28 U.S.C. §1331.

9.     Venue properly lies before this Court under 28 U.S.C. §1391(b). Plaintiff is a US Citizen and resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to plaintiff's claims have occurred in this District. Accordingly, under 29 U.S.C. §1391 (b)(2), venue lies in this judicial district.

## III.     PARTIES

10.     Plaintiff *Humberto F. Cobo-Estrella, Esq.* (Hereinafter "Cobo-Estrella") is of lawful age, US Citizen by birth, a federal trial attorney, a civil rights advocate, author, publisher, and resident of the Municipality of Carolina, in the Commonwealth of Puerto Rico. Cobo-Estrella was born on February 11, 1972, in San Juan, Puerto Rico. At approximately the young age of thirteen (13), he relocated to Central Florida with his parents, to attend Winter Park High School, in Orlando, Florida. At which time he became a permanent resident of the Sunshine State, in which he resided for approximately two decades. On or around 2001, he relocated back

to the Commonwealth of Puerto Rico, to attend to his elderly parents and continue his professional career. However, while attending High School, the plaintiff had to learn and recite with pride from his memory the "Pledge of Allegiance" every single morning. Specifically, in the year 2000, Humberto Felix Cobo-Estrella exercised his fundamental right as a federal US Citizen, to participate and cast a ballot for the election of federally elected officials, including the President and Vice-President. Co-plaintiff *Comando Estrella Corporation* is a nongovernmental organization (NGO) non-profit dedicated to address social and political issues related to Puerto Rico, advocating for the Equal Rights under Law for all federal US Citizens.[3] It symbolizes the effort of fellow Americans, to seek by lawful means a solution, where "We the People" extends to *underrepresented* 3.2 million **federal US Citizens** on the US Territory, whose fundamental right to vote for federal elected public officials is **denied** and voices **silenced** by defendant's policies. Plaintiffs aspires to create *a more perfect union* for *all* US Citizens, as their **United States federal *citizenship rights* are based upon *birth* and law, not current physical location.**

11.     Defendant *United States of America*, as represented in his official capacity by Honorable *Joseph Robinette Biden Jr*., as President. He is sued as the head of the United States of America Federal Government. Defendant has jurisdictional powers within the judicial District of Puerto Rico, including the granting of federal US Citizenship to residents as well as enacted Puerto Rico Federal Relations Act, among other federal laws, applicable to this District. Defendant is vicariously liable for unlawful acts and omissions of federal employees, who were responsible, but failed to conduct the 2020 federal presidential elections within Puerto Rico. His mailing address is The White House, 1600 Pennsylvania Ave. N.W., Washington, DC 20500

12.     The U.S. Department of Justice is a codefendant to comply with requirements. It provides legal representation to codefendant Federal Government of the United States. It failed to act to prevent unlawful acts against US Citizens, including plaintiff, as alleged herein. The

---

[3] comandoestrella.com

mailing address for the office of the Attorney General, Honorable Merrick B. Garland, is US Department of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530-0001.

## IV.    FACTUAL ALLEGATIONS

13.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

14.     As indicated above, the Plaintiff is *Humberto Felix Cobo-Estrella*, Esq.



15.     Plaintiff is a civil rights federal trial attorney and staunch advocate for equal rights of all US Citizens, including *voting rights* of *federal* US Citizens in Puerto Rico.

16.     He was born on February 11, 1972, in San Juan, Puerto Rico and therefore is a federal US Citizen by birthright.

17.     He has a US Passport and has lived extensively both in the mainland US (Florida) as well as on the US Territory (Commonwealth of Puerto Rico).

18.     His Mother was a Public School Math and Spanish Language Teacher.

19.     After relocating with both of his parents to the State of Florida on or around 1985, at approximately the age of thirteen, he began attending Winter Park High School, where he immediately got actively involved and distinguished himself as an Honor Student, he Obtained the *President Academic Fitness Award* and every school day recited the *Pledge of Allegiance* to the American Flag. After successfully completing high school between 1986 thru 1989, he graduated with honors. Shortly after, he began his studies at the University of Central Florida, where he got involve in Student Senate, Interfraternity Council, became a member of the Alpha Tau Omega Fraternity, Director of Multicultural Affairs for the Student body and became of member of the University President's Strategic Planning Council. He later started his publishing business and gained the recognition as "Phil" the Publisher of "Que Pasa Orlando/Hispanic" a

bilingual full color magazine. Recognized then by the Mayor and the Governor of Florida, as one of the influential members of Central Florida's fast-growing Hispanic American Community.

20.     On November 7, 2000, plaintiff Humberto Felix Cobo Estrella participated in what became a controversial/contested 2000 federal election for the President and Vice-President of the United States. Effectively participating in the election of federal public officials.

21.     However, shortly after on or around 2001, the plaintiff relocated from the State of Florida back to the Commonwealth of Puerto Rico, as result of a job offer from Verizon to become Florida Expansion Project Manager for its Business Registry Publication in Puerto Rico, and deteriorating health of his elderly parents, who had relocated back to the Island years earlier.

22.     Upon return to the Commonwealth of Puerto Rico, plaintiff discovered defendant effectively had silence and suppressed his ability to vote the election of federal public officials, thru the unlawful disenfranchisement of federal US Citizens from Puerto Rico. Thus, he now became unable to exercise his existing right to vote in America's democracy, for the president.

23.     During the recent 2020 federal election, plaintiff was able to participate in the political primary for the Republican Party, a private organization, in the Commonwealth of Puerto Rico, yet he was **not** allowed by defendants, to later vote on the party's candidate for the Presidential Election. Therefore, defendants unlawfully and effectively excluded a federal US citizen, the plaintiff, from participating in a federal election for the President of the Untied States on November 3, 2020.

24.     Cobo-Estrella's right to freedom of political expression and fundamental right to vote as a federal US Citizen was violated by defendants, in violation of cited laws.

25.     However, Puerto Rico is a US Territory and federal US Citizens do not need a passport to go to Puerto Rico. In fact, traveling to Puerto Rico, from the mainland United States is the same as driving from Illinois to Iowa, or taking a flight from New York to Los Angeles.

**26.** The United States is a nation that prides itself of its rich cultural history, diversity, equity, and inclusion. **Yet most Americans don't know that puertorricans *are* US Citizens.**

27. Plaintiff now comes before this Court to seek what is deemed to be *fair* and *just*.

## V.     CAUSES OF ACTIONS

<u>**COUNT I: Violation of the Fundamental Right to *Freedom of Speech (1ˢᵗ. Amendment)***</u>

28. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

29. Article 19 of the Universal Declaration of Human Rights adopted by the United Nations General Assembly in 1948, recognizes *the right* to *freedom of opinion* and *expression*.

30. When a federal US Citizen cast a ballot, he engages in free *speech*, a fundamental right entitled to protection under the ***First Amendment*** of the Constitution of the United States. It constitutes a fundamental *expression of political views* and a political opinion. In essence, in today's modern democratic society "voting" is a form of free speech. The First Amendment confers US Citizens vital rights to free speech and association, in this case speaking as citizens on matters of public concern, such as the elected officials responsible for federal public policies.

**31.     Defendant, has no legitimate government interest to protect, by systemically excluding federal US Citizens in the Commonwealth of Puerto Rico, from the election process of federal public officials and denying a single representative (plaintiff's) and member of Congress, the right to participate in the final vote on federal laws, etc.**

**32.     Established by Article II, Section 1 of US Constitution, the Electoral College is the formal body which elects the President and Vice President of the United States. Currently, the plaintiff has no representative in the electoral college, in violation of Sec. 737**

**33.     3.2 million US Citizens are denied the right to express their public opinion thru voting with respect to elected federal public officials. Specifically, here, Plaintiff a former Florida resident, now living in the Commonwealth, as federal US Citizen, was**

**denied his right to freedom of speech in November 3, 2020, when federal elections were not carried out in the Commonwealth of Puerto Rico for President/Vice President. This ongoing exclusion of US Citizens by the defendants, is now *unamerican* and *undemocratic*.**

34.    Defendants violated plaintiff's fundamental right to free speech with respect to federal government officials and policies. Which is likely to occur yet again in 2024 elections.

### COUNT II: Violation of the Fundamental Right to *Vote*

35.    Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

36.    Article 21 of the Universal Declaration of Human Rights adopted by the United Nations General Assembly in 1948, specifically states "*Everyone* has the right to take part in the government of his country, directly or through freely chosen representatives…. …the will of the people shall be the basis of the authority of government, this will shall be expressed in periodic and genuine elections which shall be *universal* and *equal suffrage*…". Further, Article 2 states "…no distinction shall be made on the basis of the political, jurisdictional or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty."

37.    Plaintiff is of Hispanic American *race*. Article II of the US Constitution states that the right of Citizens, who are eighteen years of age or older, *to vote* shall not be denied or abridge by the United States, on account of *rac*e. Yet, defendant's ongoing *unamerican* policy to exclude US Citizens from Puerto Rico, from participating in the election of federal elected official, as well as various federally funded programs, considering Puerto Rico consists primarily of *Hispanic American* potential voters, is regrettably to say, *racist*.   Despite our belief in Democracy, the **separate unequal** treatment of US Citizens from Puerto Rico, by restricting their right to vote, have voting representation and/or participate in federally funded programs, unlawfully restrict Plaintiff's fundamental right to vote.

38.     *Disenfranchisement* is being deprived of a right or privileged, specifically in this case the *right to vote* in Federal elections, as result of the United States long history of systemic disenfranchisement of minorities including African Americans, Women and Native Americans.

39.     Defendants exclude voting participation of 3.2 million Hispanic Americans by disenfranchisement of Puerto Rico's federal US Citizens. When a federal US Citizen has *his* fundamental right to vote, *taken away*, they are *also* denied the equal protection under the law.

40.     Our history is filled with persistent struggle of protected underrepresented groups to gain recognition of their *voting rights*. Black men obtained the right to vote in 1870 with ratification of the *fifteenth amendment*. Later, as result of the women's suffrage movement, women nationwide won the right to vote in 1920 with ratification of the *Nineteenth Amendment*. Despite having passed the *Fourteenth Amendment* to US Constitution in 1868 to grant African Americans the right to citizenship, blacks continued to be excluded from the voting process. Thus, resulting in the ratification of the *Fifteen Amendment* in 1870. In 1965 Congress passed the *Voting Rights Act* in response to African American's civil rights movement, to secure black's voting rights. There is, regrettably, a historic pattern in America, of suppressing voting rights. It wasn't until 1924 that Native Americans were given the right to full citizenship with the Indian Citizenship Act, known as Snyder Act, however, they struggled, until the Voting Rights Act, as amended, outlawed any practices that denies their voting rights.

41.     The original US Constitution did not define voting rights for citizens; until 1870 only white men were allowed to vote. However, the fifteenth amendment ratified in 1870, then extended voting rights to men of all races. Defendant violated plaintiff's rights to vote on account of his race as *Hispanic*.

### COUNT III: Violation of the Fundamental Right to *Equal Rights under the Law*

42.     The foregoing paragraphs are realleged and incorporated by reference herein.

43.     Article 1 of the Universal Declaration of Human Rights adopted by the United Nations General Assembly in 1948, recognizes that *all* human beings are *equal* in dignity and *right*. Article 7 states "*All* are *equal* before the law and are entitled without any discrimination to *equal protection of the law*.

44.     In 1896, the United States Supreme Court decision of *Plessy v. Ferguson*, 163 U.S. 537 (1896), legalized the erroneous doctrine of "separate but equal" for public facilities for races. Unjustly subjecting African Americans to a *second-class* citizenship by legalized racial segregation. It wasn't until 1965 that the problem with African American disenfranchisement was resolved. Specifically, with enactment of The Voting Rights Act of 1965, as amended.

45.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, essentially ratified provisions of the **Civil Rights Act of 1866**, which guaranteed all Citizens would have the right to equal protection of the law. "[a]nd with a view to affording reasonable protection to **all persons** in their constitutional **rights of equality before the law**, without distinction of race or color…" Sec. 4, Chap. XXXI  14 Stat. 27 (Emphasis) Further mandates that "**all persons born in the United States** and not subject to any foreign power, excluding Indians not taxed, are **hereby declared to be citizens of the United States… …and to full and equal benefit of all laws…**" Chap. XXXI, Sec. 1, 14 Stat. 27 (Chap 31) (Emphasis) **This law defined citizenship and affirmed all citizens are equally protected by federal laws.**

46.     In 1954, with *Brown v. Board of Education*, 347 U.S. 483 (1954), the United States Supreme Court declared unlawful racial segregation in public schools, doing away with "separate but equal" doctrine established by *Plessy v. Ferguson, supra.* The fundamental principle of *"Equal justice under Law",* engraved in the West Pediment of the  United States Supreme Court Building, predates Chief Justice Fuller opinion in *Caldwell v.*

*Texas*, 137 U.S. 692 (1891), as its origin is a phrase "equal justice" used by Athenian leader *Pericles* in 431 BC.

47.     The exclusion of Puerto Rico's federal US Citizens from the election process of federal public officials, specifically the President and Vice President, as well as non-voting status of its only Representative in Congress, constitutes a violation of the Equal Protection principle of the Fifth Amendment to the United States Constitution's due process clauses. The concept of due process and equal protection are not mutually exclusive, pursuant to reverse incorporation as set forth by the United States Supreme Court in *Bolling v. Sharpe*. 347 U.S. 497 (1954) In finding that racial segregation in public schools of the District of Columbia was a denial of due process of law guaranteed by the Fifth Amendment, the Court did not apply Fourteenth Amendment's Equal Protection Clause, which applies only to states, but rather segregation was unconstitutional under the due process clause of the Fifth Amendment. Chief Justice Earl Warren held that "*the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive.*" The Court state "*discrimination may be so unjustifiable as to be violative of due process.*" Referring to the District of Columbia, the Court held that, in light of their decision in *Brown*, it was "unthinkable that the same Constitution would impose a lesser duty on the Federal Government". See *Bolling v. Sharpe*, *supra*.

48.     **Defendant's ongoing segregation of US Citizens in Puerto Rico, including plaintiff, as part of the US and subject to its jurisdiction, denying them the equal protection under law and the fundamental right to participate in elections of elected federal officials, constitutes the *separate* and *unequal* treatment of US Citizens, reduced to a "second-class" citizenship.** Which inevitable denies the right to free speech thru political expression in federal elections, as their single representative in Congress has no final vote and Puerto Rico US Citizens cannot express their opinion politically about elected federal officials in the executive branch. Resulting also, in the social and economic segregation of the US Citizens in Puerto Rico.

**In this respect, *Defendant encouraged America to treat citizens from Puerto Rico as "foreign in a domestic sense".* We are full citizens, when is economically convenient for government.**

49.     In 2020 plaintiff was denied the equal protection. As a result, he was treated less favorably than federal citizens in Continental US and subjected to disparate treatment. By exercising preference towards citizens living abroad/outside US, while excluding the plaintiff.

<u>**COUNT IV: Violation of the Fourteenth (14) Amendment**</u>

50.     The foregoing paragraphs are realleged and incorporated by reference herein.

51.     The Fourteenth Amendment extends ***constitutional citizenship*** to all individuals born within United States territory. Section One of the Fourteenth Amendment to the US Constitution, states that *"[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States…"* Plaintiff was born in San Juan (PR) in 1972, *within* the United States. Therefore, the plaintiff is entitled to ***federal U.S. citizenship***. This citizenship is separate and distinctive from that of a state or here, territory (commonwealth). In the *Slaughterhouse Cases*, the Court stated *"[a]nd these privileges they would enjoy whether they were citizens of any State or not. Inhabitants of Federal territories and new citizens, made such by annexation of territory or naturalization, though without any status as citizens of a State, could, nevertheless, as citizens of the United States, lay claim to every one of the privileges and immunities which have been enumerated…"* *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873) at page 208. Court further stated, in reference to the Amendment *"[i]t declares that persons may be citizen of the United States without regards to their citizenship of a particular State, and it overturns the Dread Scott decision by making all persons born within the United States and subject to its jurisdiction citizens of the United States."* *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873) at page 96. **Therefore, plaintiff is entitled to his fundamental right to vote in the election of federal public officials, regardless of his status as citizen of a State**

**or Territory, as his right arises out of his federal U.S. citizenship, not his State or territory citizenship. It is necessary to recognize existence of established dual citizenship distinction.**

52.     Under the Naturalization/Citizenship Clause of the Fourteenth (14th.) Amendment to the US Constitution, as held by the United States Supreme Court in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), *anyone* born on U.S. soil and subject to its jurisdiction is a natural born citizen. Therefore, **Puerto Rico residents born on Territory have *birthright* Citizenship**.

53.     Defendant has unlawfully segregated plaintiff and similarly situated US Citizens in the Commonwealth of Puerto Rico, by enforcing a policy of exclusion which systematically marginalizes and disenfranchises US Citizens in the Commonwealth of Puerto Rico. Thus, abridging and/or denying US Citizens, including plaintiff, citizenship rights (i.e. voting in Federal Elections), and ultimately denying plaintiff the equal protection of the laws secured by the Fourteenth Amendment.

54.     With ratification of the *Fourteenth Amendment*, defendant recognized that "**All** persons **born** or naturalized **in the United States**, and **subject to the jurisdiction** thereof, **are citizens of the United States** *and* of the State wherein the resided. (Emphasis) Essentially, defendant granted *dual citizenship* being the first that of the nation "United States" and the other, acknowledging that of each "State". Plaintiff is a "person" that was "born" in "the United States" and as resident of the Commonwealth of Puerto Rico, is "subject to the jurisdiction thereof".

55.     Plaintiff asserts defendant has wantonly violated his federal citizenship rights pursuant to the Fourteenth Amendment of the Constitution of the United States.

**<u>COUNT V: Violation of the Fifteenth (15) Amendment</u>**

56.     The foregoing paragraphs are realleged and incorporated by reference herein.

57.     Section One of the Fifteenth Amendment to the US Constitution, states that *"[t]he right of citizens of the United States to vote shall not be denied or abridge by the United States or by any State on account of race, color, or previous condition of servitude-"* Plaintiff

belongs to the Hispanic American racial group and is of Puerto Rico origin, thus belonging to a recognized racial minority underrepresented group. Defendant unlawfully excludes plaintiff from participating in the federal election process, based on his territory (commonwealth) citizenship, which effectively subjects plaintiff to unlawful *disparate treatment* **because of** his *race*, as residents of Puerto Rico are considered "alien races" (See *Insular Cases*) today "Hispanics", thus restricting federal citizenship voting rights based on *racial bias*. In this respect, it makes no difference whether Puerto Rico is incorporated/unincorporate as a State. **Plaintiff is a *federal US Citizen* based on the Constitution's grant of *birthright citizenship*, as well as other federal legislation which specifically made the residents of Puerto Rico, federal U.S. Citizens.** To exclude him and members of his "alien races" from Puerto Rico now, is almost *racist*. Unequal treatment of persons from Puerto Rico because of *race* result in anachronistic political inequality.

58.     Following the Civil War, the US Congress passed the *Fifteenth Amendment* to the Constitution of the United States, which protected the "right" of "citizens of the United States" which could not be denied by "the United States" specifically the right to "vote" because of *race*. The **Fifteenth Amendment** reads as follows:

> Section 1
> **The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race**, color, or previous condition of servitude—
> Section 2
> The Congress shall have the power to enforce this article by appropriate legislation.
> (Emphasis)

59.     With ratification of the fifteenth amendment in 1870, it became illegal for the Federal Government to deny US Citizens the right to vote. However, Plaintiff asserts defendant has systemically *suppressed* that voting right for US Citizens, including plaintiff, who reside in the Commonwealth of Puerto Rico. **Plaintiff asserts, specifically, Congress enacted the Puerto Rico Federal Relations Act, acting within the scope of Section 2 of the fifteenth amendment.**

60.     The United States Supreme Court explained that "[t]he constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the general government, or by the states, against *any citizen* because of his *race*. **All citizens are equal before the law**. The guaranties of life, liberty, and property are for all persons, within *the jurisdiction of* the United States, or of any state, without discrimination against *any* because of their *race*. *Gibson v. State of Mississippi*, 162 U.S. 565, 567 (1896). (Emphasis) Plaintiff lives in the Commonwealth of Puerto Rico *within* the jurisdiction of the US.

61.     Plaintiff has been subjected to disparate treatment as a US Citizen, because of his race and place of origin, given that similarly situated US Citizens in the District of Columbia/Washington D.C., (not a State) were allowed to participate in past presidential elections, by virtue of the Twenty third (23) Amendment to the Constitution, since 1961. Which extends the right to participate in presidential elections to the District of Columbia. It grants district electors in the electoral college, as though it were a state, though the district can never have more electors than the least-populous state.

62.     Defendant has unlawfully subjected plaintiff and similarly situated Hispanic US Citizens in the Commonwealth of Puerto Rico to *disparate treatment* on account of their *race.*

63.     Defendant the United States *now* violates plaintiff's Fifteenth Amendment right, by denying plaintiff, as US Citizen, the right to vote in Federal Elections, on account of his *race*.

### **COUNT VI: Violation of the *Puerto Rico Federal Relations Act* 48 U.S.C. §737**

64.     The foregoing paragraphs are realleged and incorporated by reference herein.

65.     The *Puerto Rico Federal Relations Act of 1950* (Pub. L. 81-600) was enacted by Congress and signed into law by President Harry Truman on July 3, 1950, to enable the residents of Puerto Rico to organize a local government pursuant to a constitution of their own. The 82nd Congress ratified the amended Constitution on July 25, 1952. Together with the *Jones-Shafroth*

*Act*, except for some repealed provisions, and Pub. L. 82-447, constitute the organic laws that form basis of the government of Puerto Rico and dictates its relationship with the United States.

66.     The *Puerto Rico Federal Relations Act*, privileges and immunities section reads:

> "[t]**he rights**, privileges, and immunities of **citizens of the United States** shall be **respected in Puerto Rico to the same extent as though Puerto Rico were a State** of the Union and subject to the provisions of paragraph 1 of section 2 of Article IV of the Constitution of the United States."[4] **48 U.S.C. §737** (Emphasis)

67.     **Section 734** of the Puerto Rico Federal Relations Act, as amended, *also* mandates that "[t]he **statutory laws of the United States** not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, **shall have the same force and effect in Puerto Rico as in the United States**, except the internal revenue laws other than those contained in the Philippine Trade Act of 1946." 48 U.S.C. §734 (Emphasis)

68.     Puerto Rico for all intended purposes, is considered by federal law and has been treated often by Courts as a "State". Section (a) of Title 42 U.S.C. §1981 includes a "Statement of Equal Rights" under the law, which states "**[a]ll persons** within the jurisdiction of the United States shall have **the same right** in every State and Territory…" (Emphasis) In *Torres v. Puerto Rico*, the United States Supreme Court held that the fourth amendment guarantee against unreasonable search and seizure *applies to* Puerto Rico. See *Torres v. Puerto Rico*, 442 U.S. 465 (1979).  Chief Justice Burger, citing *Mullanez v. Anderson*, 342 U.S. 415 (1952), opined that Congress had the authority to extend greater constitutional protection to the territory, specifically when Congress authorized Puerto Rico to write its own Constitution in 1952. Therefore, free speech and due process *also apply* to Puerto Rico. We should point out that in concurring, Justice Brennan opined that any limits to rights guaranteed by the US Constitution, as result of the Insular cases, had become anachronistic by 1979.  This District Court has held that Puerto Rico

---

[4] (Mar. 2, 1917, ch. 145, § 2, 39 Stat. 951; Feb. 3, 1921, ch. 34, § 1, 41 Stat. 1096; Mar. 2, 1934, ch. 37, § 1, 48 Stat. 361; Aug. 5, 1947, ch. 490, § 7, 61 Stat. 772; July 3, 1950, ch. 446, § 5(1), 64 Stat. 320.)

is considered a "state" for Section 1983 purposes, which provides a procedural mechanism to enforce federal constitutional and statutory rights, when a defendant deprives a plaintiff of a federal right, while acting under color of state law. See *Rivera-Lugaro v. Rullán*, 500 F. Supp.2d, 39 (D.P.R. 2007). Therefore, Puerto Rico is a "state" for §1983 purposes. See *Rossi-Cortes v. Toledo-Rivera*, 540 F. Supp.2d 318, 323 (D.P.R. 2008).

**69.     Plaintiff asserts defendant has denied him, a federal US Citizens, his fundamental right of freedom of expression, thru exclusion from the election of federal elected officials, in violation of the (1) Equal Protection under the Law, the (2) Fifteenth Amendment and specifically here (3) Sec. 737 of the Puerto Rico's Federal Relations Act.**

70.     Congress has power to regulate Federally owned territories and *property*, pursuant to the *territorial clause* of the Constitution. See US Constitution, Art. IV Sec. 3. However, that section specifically refers to property, such as *territories*. Whereas the first ten amendments to the US Constitution, constitute the "Bill of Rights" of Citizens, placing restrictions on federal government and outlines the *rights* of *the people*. **Congress cannot diminish rights guaranteed to US citizens, nor discriminated against based on racial factor such as place of origin/race, with the pretext it has power to regulate "property". Federal US Citizens are NOT property of Congress. Thus, the need to differentiate between *the people* and its property. Property rights cannot diminish Puerto Rico residents US Citizenship, into a *second-class*.**

*71.*     To claim Congress and federally funded programs *can* exclude US Citizens from Puerto Rico, supposedly because they don't pay individual federal income tax, constitutes a poll tax on voting. Which was abolished in 1964 thru the Twenty-Fourth Amendment. A *pretext*, given that the Commonwealth of Puerto Rico contributes *more* to federal government revenue than the following *six* States:  *Vermont, Wyoming, South Dakota, North Dakota, Montana, and Alaska.* See Internal Revenue Services, SOI Tax Stats – Gross Collections, by State of Tax and

State – IRS Data Book Table 5.[5] From 1998 up until 2006, Puerto Rico consistently contributed more than $4 Billion annually in federal taxes and impositions into the national fisc, more than the IRS collected from taxpayers in the referenced six states of the Union.

72.     The per-capita income in Puerto Rico (median $20,166) is much lower than the averages per-capita income in the United States. Given that median income for Puerto Rico residents falls below the threshold of $24,400 set by the IRS, most would not be required to pay federal income tax. However, federal government employees in Puerto Rico, the members of the Armed forces, those with income sources outside of Puerto Rico, individuals that do business with the Federal government/contractors and Puerto Rico-based businesses that transfer income to the mainland are required to pay federal income tax and must comply with IRS filing requirements. Residents of Puerto Rico also pay customs taxes, federal commodity taxes, and federal payroll taxes. Employers in Puerto Rico are subject to both Federal Insurance Contribution Act (FICA) tax (a payroll withholding tax, which funds Social Security and Medicare) ante the Federal Unemployment Tax Act (FUTA). In 2016, Puerto Rico paid close to $3.5 billion into the US Treasury int the form of Business Income Taxes, Individual income tax withheld and FICA tax, Individual income tax payments and SECA tax, Unemployment insurance tax, Estate and trust income tax, Estate tax, Gift tax, and Excise taxes.[6] However, federal US Citizens from Puerto Rico are unjustly excluded from federal programs and/or subject to inferior allocations, including social welfare programs. Currently they are unjustly excluded from Supplemental Security Income (SSI) benefits, receives less than 15% of the Medicaid funding it would receive if it were treated like a "state" and Medicare providers receive substantially less-than-full state-like reimbursements, contributing to the migration of physicians.

[5] available at https://www.irs.gov/statistics/ Archived 12 November 2020 at the Wayback Machine soi-tax-stats-gross-collections-by-type-of-tax-and-state-irs-data-book-table-5 (last visited 9 April 2020).
[6] Table 5. Internal Revenue Gross Collections, by Type of Tax and State, Fiscal year 2016.xls Archived 13 September 2021 at the Wayback Machine IRS.gov Accessed 10 November 2020.

73.     As discussed, both federal statutes and case law have recognized Puerto Rico, as a "state" for purposes of federal law. Puerto Rico uses US Currency, US Postal Service, Immigration and Border are controlled by US, has a Federal District and a Bankruptcy Court, Citizens have US Passports, and can travel freely between the States. Most federal government agencies have some presence on the Island, and all citizens are subject to federal jurisdiction. Although from 1901 to 1952 Puerto Rico was considered an unincorporated territory, with over 100 years of US presence on the Island, Puerto Rico's relationship with the United States now is very similar to that of one of the fifty States. Decisions made by the Puerto Rico Supreme Court are even reviewable by the Supreme Court of the United States. We assert that 1952 Puerto Rico ceased to be an unincorporated territory. **The Federal Government regulates Puerto Rico, by establishing laws and public policies that apply to Puerto Rico citizens, without any form of legitimate consent (voting) from Puerto Rico citizens, essentially in all matters the Federal Government regulates for any State of the Union. However, colonialism endures, as long as US Citizens are denied effective participation in a representative democracy. Such disparate treatment to US Citizens, does not comply with the equal protection under law. Although Congress has broad powers with respect to territory, Congress does not have the power to treat US Citizens, including those from Puerto Rico, arbitrarily nor discriminate by excluding citizens from exercising fundamental citizenship rights, including *voting*. This Plessy-era separate unequal class of citizenship is inconsistent with modern day America. *Residents of Puerto Rico were granted federal U.S. Citizenship over one hundred years ago and therefore are longstanding U.S. Citizens, deserving of electoral college representation.***

74.     **If section 737 of the Puerto Rico Federal Relations Act mandates that the Federal Government recognize rights of US Citizens to *the same extent* as if Puerto Rico were a "State", this places federal US Citizens of Puerto Rico, including plaintiff, within the scope of Article One and Two of the United States Constitution, which states that**

**electors are to chosen by "the People of the several States", and Puerto Rico residents are therefore, *also* entitled to choose electors in federal U.S. Presidential elections. This would effectively end systemic disenfranchisement of these federal US Citizens, at a national level.**

75.     As result of lack of voting participation of Puerto Rico US Citizens in the election of federal elected public officials, Puerto Rico has been subjected to long-standing inequities, disparities, and inequalities in many federal programs. Today, there is an urgent need for equity, for example, the Medicare Advantage (MA) program, whose rate in Puerto Rico are 42% below the national average. Failing to close gap in MA funding between Puerto Rico and States, downgrades Puerto Rico health care system, thus forcing both patients and physicians to migrate.

76.     Defendant's conduct as alleged herein constitutes wanton violation of the Puerto Rico Federal Relation Act. The stated reason for defendant's conduct was not the true reason, but instead *pretext* to hide deeply embedded discriminatory *animus* towards minorities, including Hispanic Americans, specifically from Puerto Rico origin. Resulting in a violation of Sec. 737.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct is unlawful and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A. That this Honorable Court issues a *Declaratory Judgment* declaring that Defendant's actions and/or omissions violate applicable laws.
B. That this Honorable Court recognizes that *federal US Citizens* from Puerto Rico, including the Plaintiff, are entitled to have "Electoral Votes" for the election of federal elected public officials, such as the President and the Vice President.
C. That this Honorable Court recognizes that the Resident Commissioner, the single delegate to Congress, representing federal US Citizens from Puerto Rico, including the plaintiff, should be allowed to vote on the floor of the House. As these federal US Citizens are entitled to have direct voting representation in Congress.
D. This Honorable Court instruct defendants to take immediate appropriate actions with respect to inclusion of US Citizens in Puerto Rico, in the federal election process, specifically Presidential/Vice Presidential Elections, as well as Order Congress to allow Puerto Rico Resident Commissioner the participate in final votes in Congress.

E.  That this Honorable Court issue Order for the appointment of External Monitors, at defendant's expenses, to supervise, inclusion and participants of US Citizens from Puerto Rico in the upcoming 2024 federal elections, as well as Congress final votes.

F.  That this Honorable Court enjoins Defendant from engaging in additional exclusion of the Plaintiff, as well as federal US Citizens from Puerto Rico, including any unlawful attempt to further interfere with plaintiff's federal voting rights.

G.  That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.

H.  Any other relief this Court deems equitable, just, and appropriate.

## VI.  JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico. October 16, 2022.

Respectfully submitted,

/S/ Humberto Cobo-Estrella
*Plaintiff*

*Humberto Cobo-Estrella, Esq.*
**USDC-PR230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
Email: hcobo@hcounsel.com

*Virtus Est Agendo*

"Virtue is action" / "La Virtud es Acción"

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whim counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Plaintiff*