THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Humberto Félix Cobo-Estrella, Esq.,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **United States,** *et al.*, <br><br> *Defendants.* | Civil No. 22-01493 (MAJ) |

**OPINION AND ORDER**

**I.      Introduction**

Plaintiff Humberto Felix Cobo-Estrella, Esq., ("Plaintiff" or "Cobo-Estrella")[1] a U.S. Citizen living in the Commonwealth of Puerto Rico, has brought forth a civil action against the United States, President Joseph Robinette Biden Jr., and the United States Department of Justice ("DOJ") (collectively "Defendants" or "United States"). (**ECF No. 4**). The suit alleges systemic "unequal exclusion" of Plaintiff and "Puerto Rico's 3.2 million" U.S. Citizens from the federal election process in violation of the Puerto Rico Federal Relations Act under 48 U.S.C. § 734, the fundamental rights to freedom of expression and the right to vote, as well as protections granted by the Fourteenth and Fifteenth Amendments and the Equal Protection Clause of the Constitution of the United States. *Id.* at 1.

In seeking declaratory relief from the Court, Plaintiff requests that Puerto Rico be

---

[1]      For the purposes of this Opinion and Order, "Plaintiff" will only refer to Cobo-Estrella, Esq. This is because the co-Plaintiff, Comando Estrella Corporation — a non-governmental organization — establishes its standing to sue under Article III insofar as Cobo-Estrella is afforded such standing. Accordingly, any determination regarding the standing of Cobo-Estrella will inherently apply to Comando Estrella Corporation.

treated as a state, thereby entitling its citizens to participate in federal elections. (**ECF No. 4 at 26-27**). Plaintiff also asks the Court to order Congress to permit the Resident Commissioner of Puerto Rico to participate in final Congressional votes. *Id*. Finally, Plaintiff requests the Court declare the current electoral system unconstitutional, mandate Defendants to include Puerto Rican citizens in the electoral process, appoint external monitors to supervise the 2024 federal elections, and award costs, expenses, and attorney's fees.[2] *Id*.

Before the Court is the United States' Motion to Dismiss (the "Motion") (**ECF No. 9**), Plaintiff's Opposition to the Motion (**ECF No. 16**), and Defendants' Reply in Support of their Motion (**ECF No. 17**).[3] Defendants' Motion aims to dismiss the Plaintiff's Amended Complaint due to justiciability concerns, specifically deficiencies in Article III standing, including injury-in-fact, traceability, and redressability. In addition, Defendants seek dismissal based on the Complaint's failure to state a claim under Fed. R. Civ. P. 12(b)(6) as it relates to alleged violations of the U.S. Constitution and the Puerto Rico Federal Relations Act. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

## II. Background

Plaintiff's suit arises from the purported suppression of his ability to vote in federal elections. (**ECF No. 4**). Plaintiff Cobo-Estrella, native of Puerto Rico, is an attorney and

---

[2] Additionally, Plaintiff requests an oral argument based on Local Rule 7(h), asserting that a discussion of the facts and relevant law, especially distinctions from the *Igartúa* cases, would aid in resolving the current issue. (**ECF No. 16 at 16**). Plaintiff also urges the Court to either reject the Defendants' Motion to Dismiss (**ECF No. 9**) or delay its consideration until post-discovery or after the proposed oral hearing. (**ECF No. 16 at 16**). Plaintiff's request for oral argument will be addressed in turn.
[3] Also before the Court is Plaintiff's Emergency Motion filed on October 11, 2023, seeking leave to amend the Complaint to add and remove specific co-plaintiffs and requesting entry of default or sanctions against Defendants. (**ECF No. 24**). This motion will be discussed in turn below.

civil rights advocate. (**ECF No. 4 at 6**). He has spent time living in the state of Florida and currently resides in Puerto Rico. *Id*. at 6-7. While in Florida, he exercised his right to vote in the 2000 United States Presidential Election. *Id*. at 7. Following his time in Florida, Plaintiff relocated back to Puerto Rico. *Id*.

Plaintiff's Amended Complaint alleges that during the 2020 federal election, he was permitted to partake in the political primary for the Republican Party in the Commonwealth of Puerto Rico. *Id*. However, Plaintiff contends that he was subsequently excluded by Defendants from voting in the general presidential election. *Id*. In essence, Plaintiff claims that Defendants have unlawfully excluded him, a U.S. citizen, from exercising his purported right to vote in the presidential election held on November 3, 2020. *Id*. Furthermore, Plaintiff believes that this alleged exclusion from voting is likely to recur in the 2024 presidential election. *Id*. at 9.

Plaintiff's suit is directed at "Defendant United States of America, as represented in his official capacity by Honorable Joseph Robinette Biden Jr., as President [and] head of the United States of America Federal Government." *Id*. at 5. Plaintiff contends, "Defendant is vicariously liable for unlawful acts and omissions of federal employees, who were responsible, but failed to conduct the 2020 federal presidential elections within Puerto Rico." *Id*. Plaintiff also alleges the DOJ, which "provides legal representation to codefendant Federal Government of the United States," "failed to act to prevent unlawful acts against US Citizens, including [P]laintiff." *Id*. ¶ 15.

In short, Plaintiff alleges Defendants have effectively silenced and disenfranchised U.S. citizens in Puerto Rico from participating in the election of federal public officials. *Id*. at 5-7. He contends that this suppression violated his right to freedom of political expression and fundamental right to vote, in violation of various constitutional

amendments and Section 737 of the Puerto Rico Federal Relations Act. (**ECF No. 4**). The Court now turns to the analysis of Defendants' Motion to Dismiss.

### III.   Standard of Review

#### A.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

A defendant may move to dismiss an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A "fundamental principle of the structure of our democracy is that federal courts are courts of limited jurisdiction." *Destek Group, Inc. v. State of New Hampshire Pub. Utilities Commn.*, 318 F.3d 32, 38 (1st Cir. 2003). Since the justiciability requirement of standing is generally viewed as a component of subject matter jurisdiction, *see, e.g., Dubois v. U.S. Dep't of Agric.,* 102 F.3d 1273, 1280–81 (1st Cir. 1996), standing challenges are more appropriately brought under Fed. R. Civ. P. 12(b)(1). *See Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir. 2001) (stating that justiciability issues should be analyzed under Rule 12(b)(1)). Accordingly, this Court will first evaluate Defendants' Motion to Dismiss under the standard for motions brought pursuant to Rule 12(b)(1).

Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir. 1994). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), federal courts use a two-step method based on the plausible, not just possible standard set forth in *Twombly* and *Iqbal. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In the first step, a court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (2012). A complaint

does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court should not credit "conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023).

In the second step, the court must "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d 50, 55. "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the court] 'to draw on' its 'judicial experience and common sense.'" *Id*. (citing *Iqbal*, at 678-79). This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Twombly*, 550 U.S. at 545, 556.

The First Circuit has held in *Ocasio-Hernández* that a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14-15 (1st Cir. 2011) (cleaned up). It further explained that the complaint must state a "plausible, not merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12. (internal quotations omitted). *Ocasio-Hernández* makes it clear that plaintiffs are not required to allege every single fact that supports their claim in their complaint. *Id*. at 13. "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Id*. at 12.

A complaint that rests on "'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like'" will likely not survive a motion to

dismiss. *Niagara Bottling, LLC v. CC1 LP*, 381 F. Supp. 3d 175, 181 (D.P.R. 2019) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir. 2011). "[P]ure speculation is not" given credit at the motion to dismiss phase. *Id.* at 596; *see Méndez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir. 2010) (*Twombly* and *Iqbal* standards require district courts to "screen[] out rhetoric masquerading as litigation.").

## IV. Legal Analysis

### A. Article III Standing for Claims Relating to Presidential Elections

Before delving into the merits of this case, it is imperative to first address whether Plaintiff has the requisite Article III standing so that this Court may entertain his claims. Article III of the Constitution gives the federal courts the power to hear only "Cases" and "Controversies." U.S. Const. Art. III, § 2; *DOC v. New York*, 139 S. Ct. 2551, 2565 (2019). "That constitutional limitation means courts can resolve only 'genuine, live dispute[s] between adverse parties.'" *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 266 (1st Cir. 2022) (quoting *Carney v. Adams*, ––– U.S. ––––, 141 S. Ct. 493, 498 (2020)).

In this threshold inquiry, Plaintiff bears the burden of establishing three core elements: (1) that he suffered an injury in fact; (2) that is traceable to Defendants' conduct; and (3) that is likely to be redressed by a favorable judicial decision. *See Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 at 266; *see also Santiago–Ramos v. Autoridad de Energía Eléctrica de Puerto Rico*, 834 F.3d 103, 106 (1st Cir. 2016).

Turning to the first prong, an injury in fact, "means 'the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Laufer*, at 266. "In other words, the injury has to be

personal, distinct, and not undifferentiated." *Id*. (cleaned up and citations omitted). For an injury to be "particularized" it must go beyond a "generalized grievance" as "[i]njuries that are too widely shared or are comparable to the common concern for obedience to law may fall into the category of generalized grievances about the conduct of government." *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (cleaned up).

Concerning the second prong, traceability (also known as "causation"), Plaintiff needs to allege a "sufficiently direct causal connection between the challenged action and the identified harm." *R&D Master Enterprises, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 75 F.4th 41, 47 (1st Cir. 2023). Finally, redressability requires Plaintiff to allege "that a favorable resolution of [his] claim would likely redress the professed injury." *R&D Master Enterprises, Inc*, at 47.

Article III standing serves many purposes. *Laufer,* at 266. It "ensures the federal courts aren't morphed into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Id*. Importantly, for the issues raised herein, "it reflects separation-of-powers principles that the courts shouldn't be used to 'usurp the powers of the political branches.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

Defendants argue that because the Constitution limits participation in federal elections to the states, Plaintiff, a resident of the Commonwealth of Puerto Rico, cannot demonstrate a legally cognizable injury for Article III standing purposes. (**ECF No. 9 at 14-15 n. 4**). In support of their argument, Defendants cite *Igartúa v. United States*, where this Court found that plaintiffs there, residents of Puerto Rico, failed to satisfy the injury-in-fact requirement because they did not demonstrate that a legally protected interest was harmed, referencing Article I of the U.S. Constitution, which extends the

right to participate in congressional elections only to "the People of the several **States**." 86 F. Supp. 3d 50, 55-56 (D.P.R. 2015) (emphasis added). *Id.* Accordingly, Defendants argue that the ability to participate in elections for the President, Senators, or Representatives is tied to the states, not U.S. citizenship. **(ECF No. 9 at 11-21)**. They contend that the First Circuit has held—in harmony with other circuit courts—that residents of Puerto Rico do not participate in these elections precisely because they are not residents of a State. *Igartúa-De La Rosa v. United States,* 417 F.3d 145, 147 (1st Cir. 2005); *Atty. Gen. of Territory of Guam v. United States*, 738 F.2d 1017, 1019 (9th Cir. 1984)). (**ECF No. 9 at 13**).

As Plaintiff—who is a practicing attorney—is likely aware, this Court adheres to the principle of stare decisis. The *Igartúa* cases,[4] many of which were dismissed on justiciability grounds or on their merits, raise many of the same issues as the instant matter. (**ECF No. 16 at 7, 13**). However, Plaintiff's argument leaves much to be desired as to why those cases are distinct from the immediate action and thus are not controlling precedent. While there are some differences between the present matter and the *Igartúa* cases, they nonetheless strongly guide this Court's analysis. *See Igartúa v. United States*, 654 F.3d 99, 106 (1st Cir. 2011) (quoting *Igartúa IV,* 626 F.3d at 595 (commenting the previous *Igartúa* cases "inform our analysis of this admittedly different, but related question.")).

In particular, Plaintiff aims to distinguish this case from the *Igartúa* line of cases by focusing on U.S. Citizenship rather than place of residence as the basis for federal

---

[4] *Igartúa De La Rosa v. United States,* 32 F.3d 8 (1st Cir. 1994) ("*Igartúa I*"); *Igartúa De La Rosa v. United States,* 229 F.3d 80 (1st Cir. 2000) ("*Igartúa II*"); *Igartúa-De La Rosa v. United States,* 386 F.3d 313 (1st Cir. 2004) ("*Igartúa III*"); *Igartúa-De La Rosa v. United States*, 417 F.3d 145, 147 (1st Cir. 2005) ("*Igartúa IV*"); *Igartúa v. United States*, 626 F.3d 592, 597 (1st Cir. 2010) ("*Igartúa V*").

election voting rights. However, that argument has already been considered by this Court in *Sanchez v. United States*, a decision that predates the *Igartúa* cases. 376 F. Supp. 239, 242 (D.P.R. 1974). In *Sanchez*, the Court referenced a 1971 report commissioned by President Nixon that explored the possibility of extending voting rights for President and Vice President to U.S. citizens residing in Puerto Rico. *Id*. The report stated:

> "We . . . recommend and urge that citizens of the United States residing in Puerto Rico be granted the right to vote for President and Vice President of the United States. We strongly believe that place of residence should not be the basis for denying any qualified citizen his right to vote for the two Federal officials who represent us all."

*Sanchez v. United States*, 376 F. Supp. 239, 242 (D.P.R. 1974) (internal quotation omitted).

Nevertheless, the *Sanchez* Court concluded that under Article II, Section 1 of the U.S. Constitution, as well as Amendments XII and XXIII, the right to vote for presidential electors via the Electoral College is limited to *States* and the District of Columbia. *Id*. Thus, until Puerto Rico either achieves statehood or benefits from a constitutional amendment extending voting rights for presidential and vice-presidential elections—as was the case with the District of Columbia—its residents do not possess a substantial constitutional claim to such voting rights. *Id*.

In addition, Plaintiff asserts that Puerto Rico has often been considered a "State" for various legal purposes, citing 42 U.S.C. §§ 1981 and 1983 as examples.[5] However, the selective application of these statutes to Puerto Rico does not necessarily imply that it should be treated as a 'State' across the board, particularly in the matter of voting rights for federal offices. *See Igartúa v. United States*, 626 F.3d 592, 615 (1st Cir. 2010)

---

5     Plaintiff also invokes the Puerto Rico Federal Relations Act to emphasize his point. (**ECF No. 4 at 14, 18, 20-21**). Yet, it remains unclear how this federal statute would change the constitutional calculus concerning voting rights for Puerto Ricans.

(Torruella, J., *dissenting*) ("Puerto Rico has not been admitted as a 'State' into the Union, and therefore, citizens residing there do not qualify as 'People of the Several States.' Accordingly, I agree . . . [that] the denial of the right to vote for representatives in Congress to United States citizens who reside in Puerto Rico does not violate the provisions of Article I").

That said, Plaintiff makes a strong appeal for judicial intervention, invoking historical examples like *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), *Plessy v. Ferguson,* 163 U.S. 537 (1896), and *Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137 (1803) to challenge Defendants' insistence on a legislative solution. (**ECF No. 4 at 11-14**). While the call for judicial action is compelling, given concerns of "electoral disenfranchisement and lack of participation in federal affairs, [are] issues undeniably undemocratic and unacceptable in a nation founded . . . on the sacrosanct principle of consent of the governed", the Court still has serious doubts that such intervention is appropriate in this context. *USA v. Pedro-Vidal*, 371 F. Supp. 3d 57, 59 (D.P.R. 2019), *aff'd sub nom. United States v. Pedro-Vidal*, 991 F.3d 1 (1st Cir. 2021). After all, *Marbury v. Madison* establishes judicial review, ***not*** judicial overreach. 5 U.S. 137, 1 *Cranch* 137 (1803).

Consistent with the line of reasoning in the *Igartúa* decisions and related case law, Plaintiff does not have a "legally protected interest" at stake, given he is a resident of Puerto Rico, an unincorporated territory, not a state. *See Igartúa-De La Rosa*, 417 F.3d 145 at 147; *see also United States v. Vaello Madero*, 142 S. Ct. 1539, 1541 (2022) (noting that Puerto Rico is one of the United States' five territories); *Igartúa v. United States*, 626 F.3d 592, 597 (1st Cir. 2010) ("We concluded in *Igartúa III* and conclude again here that Puerto Rico is not a 'state' within the meaning of the Constitution. 417 F.3d at 147.")

The right to participate in presidential and congressional elections is

constitutionally tied to the States, not to U.S. citizenship. *Sanchez v. United States*, 376 F. Supp. 239, 241 (D.P.R. 1974) (explaining that "the Constitution does not, by its terms, grant U.S. citizens the right to vote, but leaves the matter entirely to the states" and while "citizenship may be a prerequisite to voting, the right to vote is not an essential right of citizenship," citizens residing in Puerto Rico "do not have the right to vote in presidential elections" unless Puerto Rico becomes a state or a constitutional amendment grants them that right.). Thus Plaintiff, a U.S. citizen, does not have a "legally protected interest" in voting for federal elections by virtue of his citizenship. *See Borja v. Nago*, 20-cv-00433, 2022 WL 4082061, at *7 (D. Haw. Sept. 6, 2022) ("[T]erritorial residents have no right to vote in federal elections even though they are affected by federal law.") Accordingly, this Court finds that Plaintiff's inability to participate in federal elections is not an "injury in fact" that would satisfy the first prong of the Article III standing test. *See Igartua v. United States*, 86 F. Supp. 3d 50, 58 (D.P.R. 2015), *aff'd sub nom. Igartua v. Obama*, 842 F.3d 149, 152 (1st Cir. 2016) ("depriving the U.S. citizen-residents of Puerto Rico from participating in [federal] elections . . . does not constitute a violation of a legally protected interest. Therefore, this Court holds that [p]laintiffs have failed to show that they were deprived of a legally cognizable right.").

Even considering Plaintiff's grievances as an injury in some sense, such an injury would be best described as a "generalized grievance," which would fall short of the "particularity" requirement for Article III standing. *See Lyman*, 954 F.3d at 360. This conclusion draws from the principle that the alleged injury must "affect the plaintiff in a personal and individual way" and not be too "widely shared" *Lyman v. Baker*, 954 F.3d 351, 360–61 (1st Cir. 2020). Even if Plaintiff appears to only be appealing to this Court on his own behalf, the "injury" he references applies to all residents of the Commonwealth of

Puerto Rico. Thus, Plaintiff's claim, aptly characterized as a "generalized grievance" is too broadly shared among the people of Puerto Rico to confer standing.

In light of the above analysis, Plaintiff's claim cannot move past the first prong of Article III standing. Thus, his action is not justiciable before this Court. Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is hereby **GRANTED**.

### B. Article III Standing for Claims relating to Puerto Rico's Resident Commissioner

In addition to voting in presidential elections, Plaintiff argues Puerto Rico's "Resident Commissioner, the single delegate to Congress, . . . [should] be allowed to vote on the floor of the House" and requests that this Court "[o]rder Congress to allow the Puerto Rico Resident Commissioner the [sic] participate in final votes in Congress." (**ECF No. 4 at 27**).

Though not raised by Defendants, Plaintiff must have standing for each form of relief he seeks.[6] *See Town of Chester, N.Y. v. Laroe Estates., Inc.*, 581 U.S. 433 (2017) ("The plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (cleaned up). Like Plaintiff's claims regarding federal elections, his claims concerning the Resident Commissioner are a "generalized grievance," since the relief sought does not affect him "in a personal and individual way," but is instead "widely shared." Accordingly, this falls short of the "particularity"

---

[6] Defendants have requested the dismissal of President Biden and the DOJ, citing issues of traceability and redressability. (**ECF No. 9 at 9-10**). Although the Court largely agrees with the Defendants' points, it notes that these arguments only pertain to two of the three co-defendants. The Court still needs to determine whether Plaintiff has standing to proceed with this case which it can undertake *sua sponte*. *See Ramirez-Lluveras v. Pagan-Cruz*, 857 F. Supp. 2d 221, 225 (D.P.R. 2012) (citing *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995) ("Standing is the determination of whether a specific person is the proper party to bring a particular matter to the court for adjudication" and "may review [such] *sua sponte*.").

requirement for Article III standing.

The Court further observes that, Article I of the U.S. Constitution, by its terms, prohibits Puerto Rico from having a House Member. *Igartúa v. United States*, 86 F. Supp. 3d 50 (D.P.R. 2015) ("Article I of the U.S. Constitution extends the right to participate in congressional elections to 'the People of the several States.' U.S. Const. Art. I, § 2"); *see also Igartúa v. United States*, 626 F.3d 592, 596 (1st Cir. 2010) (concluding that Article I by its terms prohibits Puerto Rico from having a House Member).

In *Ballentine*, the Third Circuit rejected Mr. Ballentine's claim that as a U.S. citizen residing in the Virgin Islands, he was unconstitutionally denied the right to be represented in Congress by a regular voting member, though the Virgin Islands had a non-voting Delegate in Congress. *Ballentine v. United States*, 486 F.3d 806, 811 (3d Cir. 2007). The Court found that "since the Delegates do not represent States but only various territorial entities, they may not, consistent [] with the Constitution, exercise legislative power (in tandem with the United States Senate), for such power is constitutionally limited to 'Members chosen . . . by the People of the several States.'" *Ballentine*, 486 F.3d at 811, (citing *Michel v. Anderson*, 817 F. Supp. 126, 140 (D.D.C. 1993), *aff'd*, 14 F.3d 623 (D.C. Cir. 1994)).

The issue of Puerto Rico's Resident Commissioner's inability to vote on final House votes is strikingly similar to the issues discussed in *Ballentine*. Puerto Rico, like the Virgin Islands, is an unincorporated U.S. territory. *Ballentine*, at 811–12. Like the Delegate in *Ballentine*, so too here the Resident Commissioner does not represent a State, but only a territorial entity and thus, "[he or she] may not, consistent [] with the Constitution, exercise legislative power." *Ballentine*, 486 F.3d at 811.

Applying the *Ballentine* reasoning to the present case, it becomes evident that

Puerto Rico's Resident Commissioner, is not entitled under the U.S. Constitution to cast final votes in the House of Representatives. *Ballentine*, at 812-814. Consequently, the Resident Commissioner's lack of a final vote in the House is not a constitutional violation, but rather a manifestation of Puerto Rico's territorial status. *See Igartúa v. United States*, 86 F. Supp. 3d 50, 57 (D.P.R. 2015), *aff'd sub nom. Igartúa v. Obama*, 842 F.3d 149 (1st Cir. 2016) ("It suffices to say that since the Constitution does not affirmatively extend the federal franchise to the U.S. citizen-residents of Puerto Rico, "[i]t cannot, then, be unconstitutional to conclude the residents of Puerto Rico have no right to vote for Representatives.") Accordingly, the Court finds Plaintiff has failed to demonstrate an injury-in-fact for this claim as well.

Even assuming, *arguendo*, that Plaintiff could satisfy the first two elements of Article III standing, the ability to redress Plaintiff's claim for the relief he requests is beyond the reaches of this Court. "Puerto Rico's democratic void lies in the hands of Congress. It is not within the Article III purview and whim of federal courts to order Puerto Rico [be] admitted to the Union as a State or have its commonwealth status changed in any form so that a more democratic form of government ensue. This lies within the political process." *Pedro-Vidal*, 371 F. Supp. 3d 57 at 59.

Finding Plaintiff cannot sufficiently demonstrate injury-in-fact and redressability, this Court holds that Plaintiff's claims are nonjusticiable for lack of Article III standing.[7] "It is simply not the role of this Court to legislate, any more through declaratory action than through injunction." *Castañon v. United States,* 444 F. Supp. 3d 118, 142 (D.D.C.

---

[7] The Court need not venture into an examination of the merits of this case, as Plaintiff lacks Article III standing. Thus, this Court does not have subject matter jurisdiction to entertain the merits of his suit. Likewise, the Court will refrain from ruling on Plaintiff's request for a heightened scrutiny standard. (**ECF No. 4 at 3**).

2020). Consistent with Federal Rule of Civil Procedure 12(b)(1), Defendants' Motion to Dismiss for lack of subject matter jurisdiction is hereby **GRANTED**.

## V. Request for Oral Argument

In light of the issues presented, Plaintiff has requested oral argument pursuant to Local Rule 7(h). While the Court may grant oral argument according to Local Rule 7(h), it still retains discretion to decide a motion on the written record.

The Court acknowledges the complexities involved and the passion with which Plaintiff advances his arguments, however, the parties' pleadings alone permit a ruling without the need for oral argument. *See, e.g.*, *Domegan v. Fair*, 859 F.2d 1059, 1065 (1st Cir. 1988) (emphasizing that district courts possess wide discretion to forgo oral argument on dispositive motions, especially when the only issue is a question of law and the parties' written submissions have adequately presented the legal arguments); *Magnesium Casting Co. v. Hoban*, 401 F.2d 516, 518 (1st Cir. 1968) (denying plaintiff's motion for oral argument on the ground that the issue was sufficiently clear and stating that due process does not universally require oral argument). Accordingly, Plaintiff's request for oral argument is **DENIED**.

## VI. Emergency Motion for Leave to Amend and for Sanctions

On October 11, 2023, Plaintiff filed an "Emergency Motion for Leave to File Document and Motion for Sanctions" (hereinafter "Emergency Motion"). (**ECF No. 24**). In short, Plaintiff asks the Court for leave to amend the Complaint "to: (1) include as individual co-plaintiff Dr. Marigdalia Kaleth Ramirez-Fort, and (2) withdraw as co-plaintiff . . . 'Comando Estrella Corporation', without prejudice." *Id.* at 1. Additionally, Plaintiff seeks "entry of default against defendants, and/or in the alternative, imposition of strict sanctions" for Defendants' purported non-compliance with an Order "directing

defendants to file the Answer to the Complaint" by July 14, 2023. *Id.*

First, as to Plaintiff's request for leave to amend, Plaintiff, as a matter of right, has already amended his Complaint once, and this amended Complaint serves as the operative Complaint. *See* (**ECF Nos. 1, 4**); *Fisher v. Kadant, Inc.*, 589 F.3d 505, 507 (1st Cir. 2009) ("a plaintiff may amend his complaint once, as a matter of right, before an answer is filed" under Fed. R. Civ. P. 15(a)). According to Fed. R. Civ. P. 15(a), leave to amend should be "freely given when justice so requires." However, such permission is not to be granted where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff's request for leave to amend lacks any rationale to suggest that justice would be served by granting it. Specifically, adding the proposed new co-plaintiff, Dr. Marigdalia Kaleth Ramirez-Fort, would neither affect the outcome of this decision nor inject this case with the Article III standing it currently lacks. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In essence, Plaintiff's request does not offer a reason, nor can this Court conjure up one, which would satisfy the three-part standing criterion. Standing is not a mere formality but a constitutional cornerstone. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-02 (1998); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Without it, this Court's hands are tied.

Given these legal precedents and the absence of any articulated reason to add another plaintiff, the Court finds granting leave to amend the Complaint would be futile. The request for leave to amend is hereby **DENIED**. (**ECF No. 24**).

Second, with regards to Plaintiff's request for default and sanctions, Fed. R. Civ. P. 12(a)(4), stipulates that an answer is unnecessary while a motion to dismiss is under review. Here, Plaintiff contends Defendants failed to meet the Court's initial July 14,

2023, deadline for an answer. (**ECF Nos. 18, 24**). However, this Court subsequently approved Defendants' Motion for Reconsideration on the same issue, effectively staying the need for an answer until the current Motion to Dismiss is resolved. (**ECF Nos. 19, 20**).

Therefore, under Rule 12(a)(4), Defendants are not in default, and sanctions are unwarranted. *See Wehringer v. Power & Hall, P.C.*, 65 F.3d 160 (1st Cir. 1995) (denying plaintiff's motion for default judgment against defendants because defendants had filed a motion to dismiss, which extended the deadline for filing an answer under Fed. R. Civ. P. 12(a)(4)(A)). Plaintiff's Emergency Motion seeking sanctions or default against Defendants is hereby **DENIED**. (**ECF No. 24**).

### VII. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(1) is **GRANTED** (**ECF No. 9**) and this matter is **DISMISSED** without prejudice. (**ECF No. 4**). Likewise, Plaintiff's Emergency Motion is **DISMISSED** without prejudice. (**ECF No. 24**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of October, 2023.

*S/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**